UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CONNIE LYNN MURPHY,

               Plaintiff,

    -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY

          Defendant.

_____

**DECISION AND ORDER**

**No. 12-CV-6271T**

**INTRODUCTION**

Represented by counsel, Connie Lynn Murphy ("Plaintiff" or "Murphy"), brings this action pursuant to Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

For the reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with the applicable legal standards. Accordingly, this Court hereby grants the Commissioner's motion for judgment on the pleadings.

**BACKGROUND**

On September 25, 2009 and September 16, 2009, respectively, Plaintiff filed applications for SSI and DIB, claiming disability for the period November 6, 2006 through December 8, 2009, alleging disability as a result of degenerative disc disease in the lumbar spine and status post L4-L5 decompression and fusion. Murphy's claim was denied on February 16, 2010. Tr. 70-76. At Murphy's request, an administrative hearing was conducted on May 26, 2011, with Administrative Law Judge ("ALJ") Jennifer Whang, presiding via video teleconference. Tr. 8-42. Murphy, who was represented by attorney Kelly Laga, testified at the hearing, as did impartial vocational expert Bassey A. Duke ("Duke" or "VE").

On June 29, 2011, the ALJ issued a decision finding that Murphy was not disabled prior to December 8, 2009, but became disabled on that date and has continued to be disabled through the date of the ALJ's decision. Tr. 51-68. Plaintiff requested review of the ALJ's decision, and, on March 23, 2012, the Appeals Council denied Murphy's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1-4. This action followed.

**I.   Discussion**

**1.    Jurisdiction and Scope of Review**

42 U.S.C. §405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. When

considering these cases, this section directs the Court to accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). The Court's scope of review is limited to whether or not the Commissioner's findings were supported by substantial evidence in the record, and whether the Commissioner employed the proper legal standards in evaluating the plaintiff's claim. See Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that a reviewing Court does not try a benefits case de novo). The Court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F.Supp. 265, 267 (S.D. Tex. 1983) (citation omitted).

In this case, the parties dispute whether the ALJ's decision is supported by substantial evidence and is in accordance with the applicable legal principles, and have moved for judgment on the pleadings pursuant to Rule 12(c). See Dkt. Nos. 7, 8. Judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988). If, after reviewing the record, the Court is convinced that plaintiff has not set forth

a plausible claim for relief, judgment on the pleadings may be appropriate.  See generally Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

## II. The Commissioner's Decision to Deny the Plaintiff Benefits was Supported by Substantial Evidence in the Record

In her decision, the ALJ followed the required five-step analysis for evaluating disability claims.[1]  Tr. 55-64.  Under step 1 of the process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged date of disability. Id. at 57.  At steps 2 and 3, the ALJ concluded that, since the alleged onset date of disability (November 6, 2006), Plaintiff has had the severe impairments of degenerative disc disease in the lumbar spine, status post L4-5 decompression and fusion, but that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments.  The ALJ also determined that Plaintiff suffered from hypertension and anxiety disorder, but that these did not constitute severe impairments insofar as they did not significantly affect

_____

[1]
    The five-step analysis requires the ALJ to consider the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment which significantly limits his or her physical or mental ability to do basic work activities; (3) if the claimant suffers a severe impairment, the ALJ considers whether the claimant has an impairment which is listed in Appendix 1, Subpart P, Regulation No. 4, if so, the claimant is presumed disabled; (4) if not, the ALJ considers whether the impairment prevents the claimant from doing past relevant work; (5) if the claimant's impairments prevent his or her from doing past relevant work, if other work exists in significant numbers in the national economy that accommodate the claimant's residual functional capacity and vocational factors, the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920(a)(4)(i)-(v).

Plaintiff's ability to work. Id. at 57-58. At steps 4 and 5, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with certain limitations. Id. at 59. Moreover, the ALJ found that, since November 6, 2006, Plaintiff was unable to perform any past relevant work, but that considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in the national economy that Plaintiff could have performed. Id. at 61-62.

In the instant proceeding, Plaintiff argues that the ALJ's decision denying SSI and DIB to her was against the weight of substantial evidence, was arbitrary and capricious, and was an error of law. Specifically, Plaintiff maintains that: (1) the ALJ erred when she failed to find Murphy's anxiety to be a severe impairment; (2) the ALJ's RFC finding is the product of legal error and is not supported by substantial evidence; (3) the ALJ did not apply the appropriate legal standards in assessing Murphy's credibility; and (4) the ALJ's step 5 determination is not supported by substantial evidence. See Pltf's Supporting Mem. Of Law at p 1 (Dkt. No. 8-1). Defendant contends that substantial evidence supports the Commissioner's decision and, therefore, should be affirmed. See Def's Supporting Br. at p 1 (Dkt. No. 7-1).

Based on the entire record, the Court finds that the ALJ properly concluded that Plaintiff was not disabled within the

meaning of the Act for the relevant time period (November 6, 2006 through December 8, 2009), and therefore affirms the ALJ's decision.

**(A)  The ALJ Did not Err when she Failed to Find Plaintiff's Anxiety to be a Severe Impairment**

Plaintiff maintains that her anxiety is a severe impairment, which the ALJ erroneously failed to classify as such. Plaintiff maintains that the ALJ's "failure to do so was error which prejudiced the remaining steps of the sequential evaluation." <u>See</u> Pltf's Supporting Mem. at p 10.

A condition is a "severe impairment" when it "significantly limit[s] [the] physical or mental ability to do basic work activities." <u>See</u> 20 C.F.R. § 404.1521 (giving examples of basic work activities).  Put another way, "an impairment that is 'not severe' must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities."  SSR 96-3p, 1996 SSR LEXIS 10, 1996 WL 374181 (S.S.A.).

Here, the Court finds that the ALJ's severity determination is supported by substantial evidence and did not involve legal error. The ALJ found Plaintiff's anxiety was not severe because it did not "significantly affect [Plaintiff's] ability to work."  Tr. 58. This determination, as the ALJ explained, was supported by Plaintiff's testimony at the administrative hearing, as well as the Plaintiff's lack of significant mental health treatment.

-6-

Plaintiff testified at the hearing that she suffers from anxiety attacks, especially when under stress. Additionally, she testified that she takes up to two Xanax pills a day, which, according to Plaintiff, help to calm her down. Tr. 26, 29. Plaintiff stated that she began taking the Xanax medication during her first marriage because she was "having problems." Id. at 28. When asked by the ALJ who currently prescribes her Xanax medication, Plaintiff replied that it was "just [her] doctor." Id. at 29. When asked by her attorney whether she considered seeking any additional therapy for her anxiety, Plaintiff responded that she did not because her anxiety is "under control." Tr. 30. Plaintiff elaborated, explaining that "I know mostly what triggers it, and stuff like that." Id.

Further, Adele Jones, Ph.D., a psychological consultative examiner, evaluated Plaintiff on November 24, 2009. Tr. 299-303. Plaintiff reported to Dr. Jones that she received outpatient psychiatric treatment between ages 33 to 38, and that she occasionally struggled with anxiety and depression. Id. at 300. On evaluation, Dr. Jones reported that Plaintiff's speech was clear, and that she had coherent and goal-directed thoughts with no evidence of hallucinations, delusions, or paranoia. Id. Dr. Jones also noted that Plaintiff's mood was neutral, her sensorium was clear and she was fully oriented. Id. at 301. According to Dr. Jones, Plaintiff was able to follow and understand simple

directions, perform simple and complex tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, and make appropriate decisions. Tr. 58, 301. As Plaintiff points out in her supporting memorandum, Dr. Jones did indeed note that Plaintiff had "difficulties relating adequately with others and appropriately dealing with stress, and half the time she appears to avoid doing so and the other half forces herself to . . . ." Id. at 58, 301-302. Dr. Jones also recommended that Plaintiff continue with psychotropic medications as currently provided and recommended psychological therapy. Id. at 302. However, at the end of her evaluation, Dr. Jones concluded that, although "[t]he results of the examination appear to be consistent with psychiatric problems," Plaintiff's psychiatric problems, "with effort," did not "appear to be currently significant enough to interfere with [Plaintiff's] ability to function on a daily basis." Id. Additionally, on February 11, 2010, T. Andrews, the State Agency's psychological consultant assessed that Plaintiff's anxiety disorder was not a severe impairment. Id. at 58, 311.

Accordingly, the Court finds that the ALJ's severity determination is supported by substantial evidence and did not involve legal error. Plaintiff's argument is therefore rejected.

**(B)  The ALJ's RFC Finding is Not the Product of Legal Error and is Supported by Substantial Evidence**

Plaintiff claims that the ALJ's RFC finding is the product of legal error and is not supported by substantial evidence. Specifically, Plaintiff maintains that "[i]n addition to the lack of mental limitations, particularly relating to the ability to cope with work stress, the RFC is unsupported by substantial evidence regarding physical and postural limitations."  See Pltf's Supporting Mem. at 13-19.  After considering the medical evidence in the record and Plaintiff's testimony, the ALJ found that Plaintiff retained the RFC for sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a), except "she requires a sit/stand option, allowing her to alternate between a sitting and standing position every thirty minutes; can occasionally use ramps and climb stairs, but can never climb ladders, ropes or scaffolds; can only occasionally stoop, kneel, crouch and crawl; and should also avoid hazards, including moving machinery and unprotected heights." Tr. 59.

As an initial matter, the ALJ properly determined that Plaintiff's anxiety did not constitute a severe impairment (see discussion *supra*), and the ALJ therefore properly accounted for only Plaintiff's physical limitations in her RFC finding.

The Court also rejects Plaintiff's contention that "[t]he record contains no medical opinion of the specific functional limitations that result from Murphy's impairments, and there

doesn't appear to have been any attempt on the part of the ALJ to obtain one." See Pltf's Supporting Mem. of Law at p 14-17. Contrary to Plaintiff's argument, the ALJ's RFC was supported by the November 24, 2009 evaluation by consultative physician Dr. Harbinder Toor, who expressly addressed Plaintiff's impairments and her functional limitations. Tr. 61.

Upon examination of Plaintiff, Dr. Toor observed that Plaintiff's gait was normal, she had difficulty walking on her heels and toes, and did not require the use of an assistive device. Id. at 306. Plaintiff did not need help changing for the examination or getting on and off the examination table and was able to rise from a chair without difficulty. Dr. Toor noted that Plaintiff had varicose veins, more severe in the left leg than the right leg. Id. Dr. Toor reported that Plaintiff's cervical spine had full range of motion and her lumbar spine had some limited range of motion. Id. at 307. Plaintiff's straight leg raise test was positive bilaterally at 30 degrees with pain in the back. Id. Dr. Toor reported that Plaintiff had full range of motion in her shoulders, elbows, forearms, wrists, hips, knees, and ankles bilaterally. Id. Dr. Toor also noted that Plaintiff had full strength in her upper and lower extremities. Id. Plaintiff's joints were intact and she had full grip strength bilaterally. Id. Dr. Toor noted that an X-ray of Plaintiff's lumbar spine was normal. Id. With respect to Plaintiff's functional limitations,

Dr. Toor opined that Plaintiff had moderate physical limitations with regard to standing, walking, bending, and heavy lifting, and had mild difficulty with regard to sitting for a long time. Tr. 60, 308. The ALJ took Dr. Toor's assessments into consideration in her RFC, which she found "to be largely consistent with the record as a whole,". Tr. 61. The ALJ specifically stated that the RFC "in significant measure reflects the standing, walking, and bending and lifting limitations Dr. Toor assessed." Id.

To the extent Plaintiff's claim that the ALJ failed to develop the record, as required by 20 C.F.R. §§ 404.1512(d), (e), insofar as she failed to obtain functional limitations from a treating source, that claim is also meritless. See Pltf's Supporting Mem. of Law at p 15-17. Indeed, an ALJ is required to contact a claimant's physician for additional information regarding a plaintiff's impairments when the evidence from a treating physician is inadequate for the ALJ to determine whether the claimant is disabled. 20 C.F.R. §416.912(e)(1). Where as here, however, "there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." Crawley-Nunez v. Astrue, 08-CV-0295-A, 2009 U.S. Dist. LEXIS 119034, 2009 WL 5171880, *6 (W.D.N.Y. Dec. 22, 2009) (citing Rosa v. Callahan, 168 F.3d 72, 79, n. 5 (2d Cir.1999)).

In this case, the ALJ relied on Dr. Toor's assessments in determining Plaintiff's RFC, finding that his assessment was "largely consistent with the record as a whole." Tr. 61. Indeed, the record is replete with evidence from Plaintiff's treating physicians, opining on Plaintiff's impairments and limitations. For example, on August 1, 2007, treating physician Dr. Laura Brachman saw Plaintiff for right hip and right thigh pain. Tr. 258. Dr. Brachman noted that Plaintiff had no weakness in her lower extremities. She noted further that Plaintiff had tenderness in her right hip and her straight leg raise test was negative bilaterally. Id.

On November 5, 2007, Plaintiff saw treating orthopedist Dr. Donna Ferrero for right-sided lower back pain and lower extremity pain. Id. at 228. Dr. Ferrero observed that Plaintiff's gait was intact and she could heel and toe walk without difficulty. Id. Dr. Ferrero observed that Plaintiff's lumbar range of motion was full in flexion, but significantly restricted in extension with functional bending. Id. She had some tenderness to palpation over the right paraspinal musculature. Dr. Ferrero reported further that Plaintiff had full strength in her lower extremities and she was neurologically intact. Plaintiff's seated and supine shoulder raising test was negative, her hips had normal range of motion, and her pelvic X-ray was negative. Id. On November 13, 2007, Plaintiff saw Dr. Ferrero to review the results of her lumbar spine

MRI study, which demonstrated moderate to marked disc spinal stenosis at L4-L5 and degenerative disc disease at L5-S1. Id. at 226. Plaintiff saw Dr. Ferrero again on June 11, 2008 for back and right leg pain. Id. at 225. At that time, Dr. Ferrero reported that Plaintiff's straight leg raise test was negative bilaterally, and that she had full strength in both lower extremities. Id. On July 23, 2008 and September 19, 2008, and March 25, 2009, Plaintiff saw Dr. Ferrero for follow-up visits at which no significant changes to Plaintiff's health were noted, except that Plaintiff reported that since beginning physical and aquatic therapy, her back pain had lessened. Tr. 215, 218, 222. This evidence, along with the assessment from Plaintiff's consultative physician, is substantial evidence to support the ALJ's decision on Plaintiff's claim without needing to contact and/or obtain additional information from Plaintiff's treating sources. See Rebull v. Massanari, 240 F. Supp. 2d 265, 272 (S.D.N.Y. 2002); see also Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002). Accordingly, Petitioner's argument is rejected.

Next, the Court rejects Plaintiff's argument that the ALJ's RFC assessment was inadequate because the ALJ did not detail specific limitations on a "function by function" basis. See Pltf's Supporting Mem. of Law at 17-19.

SSR 96-8p, 1996 SSR LEXIS 5 provides that the ALJ's RFC assessment must include a function-by-function analysis of the

claimant's functional limitations or restrictions and an assessment of the claimant's work-related abilities on a function-by-function basis. With regard to physical limitations, the ALJ is required to make a function by function assessment of the claimant's ability to sit, stand, walk, lift, carry, push, pull, reach, handle, stoop, or crouch. See 20 C.F.R. § 404.1513(c)(1); §§ 404.1569a(a), 416.969a(a); Martone v. Apfel, 70 F. Supp.2d 145, 150 (N.D.N.Y. 1999). Once the function-by-function analysis is completed, the RFC may be expressed in terms of exertional levels of work, e.g., sedentary, light, medium, heavy, and very heavy. Hogan v. Astrue, 491 F.Supp.2d 347, 354 (W.D.N.Y.2007).

This Court finds that, although the ALJ did not methodically walk through each "function," the ALJ adequately considered how the evidence supported her conclusion concerning Plaintiff's physical limitations and her ability to perform sedentary work, with certain restrictions. The ALJ expressly stated that she relied on the opinion of consultive examiner Dr. Toor, who found that Murphy had moderate limitations in standing, walking, bending, and heavy lifting, and had mild difficulty sitting for a long time. Tr. 308. Additionally, in assessing Plaintiff's RFC, the ALJ recounted, in detail, Plaintiff's medical history, including her physical therapy treatments, which improved her symptoms. Tr. 60. For instance, as the ALJ pointed out, Plaintiff reported to her physical therapist that her symptoms improved after having treatments insofar as "she

was able to do the dishes without needing to sit down, and that she was also able to walk to her mailbox without pain." Tr. 60.

The ALJ also summarized Plaintiff's hearing testimony, noting that, with respect to Plaintiff's daily activities, Plaintiff testified that she "takes her children to school daily, does dishes and laundry, and cooks, but that she needs to be able to sit and cannot lift 10 pounds per her doctor's order." Tr. 60.

Accordingly, the Court finds that "the ALJ adequately explained how the evidence supports [her] conclusions about the claimant's limitations and discussed the claimant's ability to perform sustained work activities." Casino-Ortiz v. Astrue, No. 06 CIV.0155 DAB JCF, 2007 U.S. Dist. LEXIS 69526, 2007 WL 2745704, at *14 (S.D.N.Y. Sept. 21, 2007) (rejecting an exacting approach that would require ALJs to produce a detailed statement walking through each function.).

The Court also rejects Plaintiff's contention that the ALJ's RFC assessment was the product of legal error because the ALJ did not "indicate how long Murphy could sit or stand total in an 8 hour workday; whether she could do this on a sustained basis; [and] how long she needed to stand in relation to the sit/stand option." See Pltf's Supporting Mem. of Law at 18-19.

SSR 96-9p, 1996 SSR LEXIS 6 provides that "[a]n individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking), periodically. Where this need

cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded. The extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand. The RFC assessment must be specific as to the frequency of the individual's need to alternate between sitting and standing." SSR 96-9p, 1996 SSR LEXIS 6 at *19, 2006 WL 374185, *7 (1996). However, the Second Circuit has stated that "[t]he regulations do not mandate the presumption that all sedentary jobs in the United States require the worker to sit without moving for six hours, trapped like a seat-belted passenger in the center seat on a transcontinental flight." Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004). Furthermore, the regulations provide that "[t]here are some jobs in the national economy . . . in which a person can sit or stand with a degree of choice. If an individual had such a job and is still capable of performing it . . . he or she would not be found disabled." SSR 83-12, 1983 SSR LEXIS 32, 1983 WL 31253, *4 (1983).

Here, the ALJ's finding that Plaintiff maintains the RFC to perform sedentary work, with certain limitations, is well supported by the record evidence. A sedentary job is one that requires sitting and occasional walking and standing. See 20 C.F.R. § 404.1567(a). In this case, the ALJ expressly determined that

Plaintiff must be able "to alternate between a sitting and standing position every thirty minutes" in order to meet the exertional requirements of sedentary work. Tr. 59. Based upon the substantial evidence in the record, and the determination of the thirty minute frequency with which Plaintiff needs to alternate positions, the Court finds that the ALJ's RFC determination was consistent with the record and applicable legal principles.

Accordingly, Plaintiff's argument that the ALJ's RFC finding is the product of legal error and is not supported by substantial evidence is rejected.

### (C) The ALJ Applied the Proper Legal Standards in Assessing Plaintiff's Credibility

Plaintiff claims that the ALJ improperly rejected her credibility. See Pltf's Supporting Mem. of Law at 19-22. Specifically, Plaintiff argues that the ALJ did not apply the appropriate legal standards, as set forth in SSR 96-7p and 20 CFR § 416.929. The Court rejects this argument.

The credibility of witnesses, including the claimant, is primarily determined by the ALJ and not the courts. Carroll v. Secretary of Health and Human Services, 705 F.2d 638, 642 (2d Cir. 1982) (citations omitted). The Social Security regulations provide that "in determining the credibility of the individual statements, the adjudicator must consider the entire record." SSR 96-7p, 1996 SSR LEXIS 4. The ALJ found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms

[were] not credible to the extent that they [were] inconsistent with the above residual functional capacity assessment." Tr. 30. The Court finds that the ALJ properly evaluated Plaintiff's credibility.

Here, Plaintiff's RFC was based on all the evidence in the record, including Plaintiff's subjective complaints, treatment history, activities of daily living, and other factors as enumerated at 20 C.F.R. § 416.929(c)(3); Tr. 59-61.

Plaintiff testified that she was able to drive a vehicle, did laundry, did the dishes, could prepare meals, and that she cared for her personal needs. Tr. 19, 22. The record evidence also shows that she shopped, managed her finances, cared for her children ages 12 and 5, which included taking them to school and helping them with their homework. Tr. 175-177, 179, 301. Plaintiff also reported that physical therapy treatments improved her symptoms. Tr. 215, 218, 222, 264. Notably, Dr. Ferrero indicated at her initial examination with Plaintiff that Plaintiff's rehabilitation potential was "good." Tr. 216.

Additionally, Plaintiff's complaints of disabling pain were inconsistent with the other medical evidence in the record, namely Dr. Toor's report that Plaintiff's gait was normal, she needed no help changing from the examination or getting on and off the examination table, and was able to rise from a chair without difficulty. Tr. 307.

Accordingly, this Court is compelled to uphold the ALJ's decision discounting a claimant's testimony if the finding is supported by substantial evidence, as it is here.  <u>Aponte v. Secretary of Department of Health and Human Services</u>, 728 F.2d 588, 591 (2d Cir. 1984) (citations omitted).  Thus, based on the above, the Court finds that the totality of the evidence in the record supports the ALJ's assessment of Plaintiff's credibility.

**(D)  The ALJ's Step 5 is Supported by Substantial Evidence**

At Step 5 of the analysis, the ALJ determined that, "[p]rior to December 8, 2009 . . . considering the [Plaintiff's] age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the [Plaintiff] could have performed."  Tr. 62. Plaintiff claims that "[t]his is error because the vocational expert's testimony was based upon an incomplete and inaccurate hypothetical and therefore cannot provide substantial evidence to support the denial, and because a significant number of jobs were not identified."  Pltf's Supporting Mem. at p 22.  The Court rejects this contention.

Here, Plaintiff was found to be 49 years old at the time she applied for benefits, and therefore was a "younger individual" as defined by C.F.R. 20 C.F.R. § 1563(c).  The ALJ also found that, with having only completed the tenth grade, Plaintiff had a limited education. Tr. at 61;  20 C.F.R. §1564(b)(3).  Further, the ALJ

found that the transferability of Plaintiff's job skills from her past work was not material to the determination of disability. Tr. at 61.

The Commissioner may properly rely on the testimony of a vocational expert in response to a hypothetical question regarding the availability of jobs which could be performed by the claimant and which exist in sufficient numbers in the national economy. See Dumas v. Schweiker, 712 F. 2d 1545, 1553-54 (2d Cir. 1983); see also 20 C.F.R. § 416.966 (b) (stating, "Work exists in the national economy when there is a significant number of jobs in one or more occupations . . ." (parenthesis omitted)). At the administrative hearing, the ALJ posed the following hypothetical to the VE: (1) an individual possessing the same age, educational background, and past work experience as Plaintiff; (2) who is limited to sedentary work; (3) requires a sit/stand option allowing her to alternate between sitting and standing positions every 30 minutes; (4) can occasionally use ramps and climb stairs, but can never climb ladders, ropes, or scaffolds; (5) can occasionally stoop, kneel, crouch and crawl; and (6) should avoid hazards including moving machinery and unprotected heights. Tr. 36.

In this case, the ALJ properly relied upon the testimony of the VE who opined that, based on the vocational profile and RFC of Plaintiff, she could work as a silver wrapper, ticket taker or

checker, and addressor.[2]  Tr. 38.  The VE testified that silver wrapper positions exist in the numbers of 421,000 nationally and 10,000 regionally, that ticket taker or checker positions exist in the numbers of 100,000 nationally and 2,000 regionally, and that addressor positions exist in the numbers of 3 million nationally and 10,000 regionally.  Tr. 62.

Plaintiff maintains that the ALJ's step 5 determination is flawed insofar Plaintiff does not possess the ability to perform the tasks related to the remaining occupations -- i.e., ticker taker or checker and addressor -- identified by the VE.  See Pltf's Supporting Mem. of Law at 24.  Plaintiff's argument fails insofar as the Plaintiff's education was expressly considered by the VE in the ALJ's hypothetical.  Tr. 36-38.

In her pleadings, Plaintiff also argues that "[t]here is no job titled 'ticket taker/checker' in the Dictionary of Occupational Titles, [and] [that] the DOT number cited by the [VE] (not the ALJ)" is for that of parimutuel ticker-checker, which has general education scores of 3 in reasoning, math and language, such that Plaintiff would not have the ability to perform the tasks associated with this occupation.  See Pltf's Supporting Mem. of Law at 23-24.  Respondent has not addressed this particular issue its papers.  In any event, even assuming the VE misidentified the

_____

    2
        In her decision, the ALJ found that Plaintiff could only perform the work of two of these occupations -- that of ticket taker or checker and addressor -- because the VE's testimony that the work of a silver wrapper had a sedentary exertional level was not consistent with the Dictionary of Occupational Titles ("DOT").  Tr. 62.

ticket taker or checker occupation as one that Plaintiff was capable of performing given her vocational profile and RFC and the ALJ improperly relied upon said testimony at step 5, any error was harmless insofar as the VE also identified the occupation of addressor. To reiterate, the VE testified that addressor positions exist in the numbers of 3 million nationally and 10,000 regionally. Tr. 62. Pursuant to 20 C.F.R. § 416.966 (b), "[w]ork exists in the national economy when there is a significant number of jobs in **_one or more_** occupations . . ." (parenthesis omitted) (emphasis added))

Accordingly, the Court finds that the ALJ's decision at step 5 was proper and was supported by substantial evidence.

## III. Conclusion

After careful review of the entire record, and for the reasons stated, this Court finds that the Commissioner's denial of benefits was based on substantial evidence and was not erroneous as a matter of law. Accordingly, the ALJ's decision is affirmed. For the reasons stated above, I grant Commissioner's motion for judgment on the pleadings (Dkt. No. 7). Plaintiff's motion for judgment on the pleadings is denied (Dkt. No. 8), and Plaintiff's complaint (Dkt. No. 1) is dismissed with prejudice.

**IT IS SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     April 9, 2013
           Rochester, New York